No. 08-433C (Judge Bruggink)

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

ROLAND S. ROLLINS, SR.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

## DEFENDANT'S MOTION TO DISMISS

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

DONALD E. KINNER
Assistant Director

OF COUNSEL:

MAJOR JENNIFER BOTTOMS
United States Army Litigation
     Division
Military Personnel Branch
901 N. Stuart Street
Suite 400
Arlington, VA 22203-1837


AUGUST 12, 2008

LAUREN S. MOORE
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
     8th Floor
Washington, D.C. 20530
Tele: (202) 616-0333
Fax:  (202) 514-8640

Attorneys for Defendant

## TABLE OF CONTENTS

DEFENDANT'S MOTION TO DISMISS . . . . . . . . . . . . . . . . 1

ISSUE PRESENTED . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . 1

    I.  Nature Of The Case . . . . . . . . . . . . . . . . . 1

    II.  Statement Of Facts . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    I.    The Complaint Must Be Dismissed For
        Lack Of Subject Matter Jurisdiction
        Because Mr. Rollins's Claims Are Barred
        By The Statute Of Limitations . . . . . . . . . . . 6

        A.  Legal Standard . . . . . . . . . . . . . . . . 6

        B.  Mr. Rollins's Claims Are Barred By The
           Six-Year Statute Of Limitations . . . . . . . . 8

    II.  Statutory Tolling Does Not Apply . . . . . . . . 11

    III.  Equitable Tolling Does Not Apply . . . . . . . . 14

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . 15

## TABLE OF AUTHORITIES

**CASES:**                                                                    **PAGES:**

Alder Terrace, Inc. v. United States,
    161 F.3d 1372 (Fed. Cir. 1998) . . . . . . . . . . . . . 8

Aubre v. United States,
    40 Fed. Cl. 371 (1998) . . . . . . . . . . . . . . . . . 10

Bath Iron Works Corp. v. United States,
    27 Fed. Cl. 114 (1992),
    aff'd, 20 F.3d 1567 (Fed. Cir. 1994) . . . . . . . . . . 7

Biester v. Midwest Health Servs.,
    77 F.3d 1264 (10th Cir. 1996) . . . . . . . . . . . . . 13

Bilbrey v. Douglas,
    124 Fed. Appx. 971, 973 (6th Cir. 2005) . . . . . . . . 13

Chambers v. United States,
    417 F.3d 1218 (Fed. Cir. 2005) . . . . . . . . . . . 9, 10

Finn v. United States,
    123 U.S. 227 (1887) . . . . . . . . . . . . . . . . . . 14

Friedman v. United States,
    159 Ct. Cl. 1, 310 F.2d 381 (1962) . . . . . . . . . . 10

Goewey v. United States,
    612 F.2d 539 (Ct. Cl. 1979) . . . . . . . . . . . . . . 12

Hamlet v. United States,
    873 F.2d 1414 (Fed. Cir. 1989) . . . . . . . . . . . . . 6

Heim v. United States,
    50 Fed. Cl. 225 (2001) . . . . . . . . . . . . . . . . . 8

Holley v. United States,
    124 F.3d 1462 (Fed. Cir. 1997) . . . . . . . . . . . . . 6

Hopland Band of Pomo Indians v. United States,
    855 F.2d 1573 (Fed. Cir. 1988) . . . . . . . . . . . . . 8

Hurick v. Lehman,
    782 F.2d 984 (Fed. Cir. 1986) . . . . . . . . . . . . . 8

<u>Irwin v. Department of Veterans Affairs</u>,
    498 U.S. 89 (1990) . . . . . . . . . . . . . . . . . 14

<u>J&E Salvage Co. v. United States</u>,
    37 Fed. Cl. 256 (1997),
    <u>aff'd</u>, 152 F.3d 945 (Fed. Cir. 1998),
    <u>cert</u>.<u>denied</u>, 525 U.S. 827 (1998) . . . . . . . . . . . 6

<u>John R. Sand & Gravel Company v. United States</u>,
    128 S. Ct. 750 (2008)  . . . . . . . . . . . . . . 14, 15

<u>Kendall v. United States</u>,
    107 U.S. 123 (1883) . . . . . . . . . . . . . . . . . 14

<u>Maclean v. United States</u>,
    454 F.3d 1334 (Fed. Cir. 2006) . . . . . . . . . . . . 9

<u>Martinez v. United States</u>,
    333 F.3d 1295 (Fed. Cir. 2003) . . . . . . . . . . 8, 9

<u>Moyer v. United States</u>,
    190 F.3d 1314 (Fed. Cir. 1999) . . . . . . . . . . . . 6

<u>Price v. Lewis</u>,
    119 Fed. Appx. 725, 726 (6th Cir. 2005) . . . . . . . 13

<u>Real v. United States</u>,
    906 F.2d 1557 (Fed. Cir. 1990) . . . . . . . . . . . 10

<u>Reynolds v. Army & Air Force Exch. Serv.</u>,
    846 F.2d 746 (Fed. Cir. 1988) . . . . . . . . . . . . 6

<u>Sanders v. United States</u>,
    252 F.3d 1329 (Fed. Cir. 2001) . . . . . . . . . . . . 8

<u>Scheuer v. Rhodes</u>,
    416 U.S. 232 (1974) . . . . . . . . . . . . . . . . . 6

<u>Soriano v. United States</u>,
    352 U.S. 270, 276 (1957) . . . . . . . . . . . . . 7, 14

<u>United States v. King</u>,
    395 U.S. 1, 4 (1969) . . . . . . . . . . . . . . . . . 7

<u>United States v. Sherwood</u>,
    312 U.S. 584, 586 (1941) . . . . . . . . . . . . . . . 7

<u>United States v. Testan</u>,
    424 U.S. 392 (1976) . . . . . . . . . . . . . . . . . . 7

<u>Ware v. United States</u>,
    57 Fed. Cl. 782 (2003)  . . . . . . . . . . . . . . . . 12

**STATUTES:**

10 U.S.C. §§ 1201, 1203 . . . . . . . . . . . . . . . . . . 10

28 U.S.C. § 2501  . . . . . . . . . . . . . . . . . . 11, 14

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

ROLAND S. ROLLINS, SR.,            )
                                   )
              Plaintiff,           )
                                   )
       v.                          ) No. 08-433C
                                   ) (Judge Bruggink)
THE UNITED STATES,                 )
                                   )
              Defendant.           )

## DEFENDANT'S MOTION TO DISMISS

Pursuant to 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC"), the United States respectfully requests that the Court dismiss plaintiff's complaint for lack of subject-matter jurisdiction because Mr. Rollins's claims are barred by the statute of limitations and he cannot establish a basis to toll the statute.

## ISSUE PRESENTED

Whether the Court lacks jurisdiction to entertain plaintiff's claims because they are barred by the statute of limitations.

## STATEMENT OF THE CASE

I. **Nature Of The Case**

The plaintiff, Roland Rollins, is a former United States Army ("Army") specialist who served in the military for approximately three years from 1979 to 1982. He was honorably discharged on July 1, 1982 under the provisions of Army Regulation 635-200, paragraph 13-4b, for unsuitability-

personality disorder.  Mr. Rollins challenged his discharge and sought a disability separation in applications submitted to the Army Board for the Correction of Military Records ("ABCMR") in 1984 and again in 2006.  Both applications were denied.  He thereafter filed his complaint in this Court challenging his administrative discharge and requesting disability retirement, on June 16, 2008.  Because his complaint was filed more than six years after his claims accrued, the Court does not possess jurisdiction to entertain this action.

II.  **Statement Of Facts**

Plaintiff, Roland Rollins, enlisted in the Army on February 28, 1979.  App. 13.[1]  Prior to his enlistment, he underwent a medical examination, on February 1, 1979 for the purpose of enlistment.  App. 12.  Mr. Rollins completed basic training at Fort Dix, New Jersey.  App. 13.  He subsequently completed basic airborne training and was assigned to Fort Bragg, North Carolina as a medical aidman.  Id.

On May 11, 1979, Mr. Rollins was placed upon a temporary physical profile for a viral syndrome and was given physical assignment limitations.  He was again placed upon a temporary physical profile on May 21, 1979, for a viral syndrome.  Mr. Rollins was promoted to specialist four on August 1, 1980.  He

---

[1]  "App. ___" refers to the appendix attached to this motion.  "Compl. ___" refers to Mr. Rollins's complaint, filed with the Court on June 16, 2008.

was discharged on October 6, 1981 for the purpose of immediate reenlistment.  Id.

Mr. Rollins reenlisted on October 7, 1981 for a period of five years.  On February 2, 1982, he was treated for a complaint of recurrent right shoulder dislocation.  On February 11, 1982 Mr. Rollins received nonjudicial punishment under Article 15, Uniform Code of Military Justice ("UCMJ") for failing to go to his appointed place of duty.  Id.

Mr. Rollins underwent a psychiatric evaluation on April 26, 1982.  The psychiatrist stated that he met retention standards under the provisions of Army Regulation ("AR") 40-501 and that he suffered from no psychiatric disorder or disease which necessitated medical treatment.  The psychiatrist also stated that Mr. Rollins was mentally responsible, able to distinguish from right and wrong, and possessed the mental capacity to participate in board or court proceedings.  Id.  The evaluation concluded that Mr. Rollins suffered from a mixed personality disorder with borderline narcissistic, histrionic, and antisocial features.  App. 13-14.  The psychiatrist recommended that Mr. Rollins be administratively discharged under the provisions of AR 635-200, chapter 13, paragraph 4b.  App. 14.

On April 28, 1982, Mr. Rollins accepted nonjudicial punishment under Article 15, UCMJ, for disobeying a lawful command.  On May 20, 1982, he was treated for a complaint of

recurrent right shoulder dislocation. On May 24, 1982, Mr. Rollins accepted nonjudicial punishment under Article 15, UCMJ for failing to go to his appointed place of duty. Id.

On June 2, 1982, Mr. Rollins's unit commander notified him of pending separation action under AR 635-200, paragraph 13, for unsuitability-personality disorder. The unit commander stated that Mr. Rollins's duty performance was grossly substandard, and that he was constantly late for work and formations. He also stated that Mr. Rollins had no regard for authority and showed no desire to improve. Id.

Also on June 2, 1982, Mr. Rollins underwent a mental status evaluation. He was determined to be mentally responsible, to possess the mental capacity to understand and participate in board proceedings, and to meet the retention requirements of chapter 3, AR 40-501. Id.

Mr. Rollins underwent a separation medical examination on June 2, 1982, and was found to be qualified for administrative separation. App. 14-15. His separation was approved on June 11, 1982. App. 15. Mr. Rollins was honorably discharged on July 1, 1982, under the provisions of AR 635-200, paragraph 13-4b for unsuitability-personality disorder. Id.

Thereafter, on December 12, 1984, Mr. Rollins submitted an application for the correction of his military records to the ABCMR. App. 7. He sought a medical discharge, based upon his

"acute dislocating shoulder, after damaging it on active duty."
Id. He also requested that his reenlistment eligibility code and
Army reserve obligation be changed, and that AR 635-200 be
amended to permit his reenlistment.   Id.

On January 7, 1987 the ABCMR denied Mr. Rollins's
application. App. 1; 2-6.  It stated that "[t]he medical
evidence of record indicates that the applicant was medically fit
for retention at the time of his separation," and that "[Mr.
Rollins] did not have any medically unfitting disability which
would have required physical disability processing." App. 5.
Thus, the ABCMR concluded, there was no basis for medical
retirement upon Mr. Rollins's separation from the service.  Id.
The ABCMR also noted that it did not possess authority to change
Army regulations.  Id.

More than nine years later, on September 15, 2006, Mr.
Rollins sought reconsideration of the ABCMR's January 7, 1987
decision. See App. 8; Compl. ¶ 15.  He again requested that his
administrative discharge be changed to a medical discharge.  On
January 29, 2008 the ABCMR denied his request for reconsidera-
tion. App. 8; 9-19.  The ABCMR stated that "the preponderance of
evidence shows that [Mr. Rollins's] medical conditions did not
render him medically unfit to perform his duties or justify
physical disability processing." App. 18.

**ARGUMENT**

I.   The Complaint Must Be Dismissed For Lack Of
     Subject Matter Jurisdiction Because Mr. Rollins's
     <u>Claims Are Barred By The Statute Of Limitations</u>

   A.   <u>Legal Standard</u>

   In deciding a RCFC 12(b)(1) motion, a "determination of

jurisdiction starts with the complaint, which must be

well-pleaded in that it must state the necessary elements of the

plaintiff's claim, independent of any defense that may be

interposed." <u>Holley v. United States</u>, 124 F.3d 1462, 1464 (Fed.

Cir. 1997) (citations omitted).  If necessary to resolve the

jurisdictional issues, the Court may also examine relevant

evidence beyond the pleadings.  <u>Moyer v. United States</u>, 190 F.3d

1314, 1318 (Fed. Cir. 1999).  Where this Court's subject-matter

jurisdiction is placed in issue, the non-moving party bears the

burden of establishing jurisdiction.  <u>J&E Salvage Co. v. United</u>

<u>States</u>, 37 Fed. Cl. 256, 260 (1997), <u>aff'd</u>, 152 F.3d 945 (Fed.

Cir. 1998) (table), <u>cert. denied</u>, 525 U.S. 827 (1998).  When

deciding a motion to dismiss, the Court should view the

allegations of the complaint in the light most favorable to the

plaintiff.  <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974); <u>Reynolds</u>

<u>v. Army & Air Force Exch. Serv.</u>, 846 F.2d 746, 747 (Fed. Cir.

1988); <u>Hamlet v. United States</u>, 873 F.2d 1414, 1416 (Fed. Cir.

1989).

It is well-settled that this Court is one of limited jurisdiction.  Bath Iron Works Corp. v. United States, 27 Fed. Cl. 114, 122 (1992), aff'd, 20 F.3d 1567 (Fed. Cir. 1994).  Its authority to grant relief against the United States is limited by the extent to which the United States has waived sovereign immunity.  United States v. Testan, 424 U.S. 392, 399 (1976).  "[T]he United States, as sovereign, 'is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'"  Id. at 399, quoting United States v. Sherwood, 312 U.S. 584, 586 (1941).  "[I]n a Court of Claims context, that . . . waiver of the traditional sovereign immunity 'cannot be implied but must be unequivocally expressed.'"  Id. at 399, quoting United States v. King, 395 U.S. 1, 4 (1969); Soriano v. United States, 352 U.S. 270, 276 (1957).  Title 10, United States Code, Section 2501 provides that "every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues."

Thus, Mr. Rollins had six years from the accrual of his claims for wrongful discharge[2] and military disability retirement pay to file his complaint in this Court.  The plaintiff bears the

---

[2]  Mr. Rollins describes a wrongful discharge claim by the assertion in his complaint that the ABCMR "arbitrarily and capriciously refused to re-open [his administrative] discharge." Compl. ¶ 197.

7

burden of establishing, by a preponderance of the evidence, that his claims are not barred by the statute of limitations. See Sanders v. United States, 252 F.3d 1329, 1333 (Fed. Cir. 2001); Alder Terrace, Inc. v. United States, 161 F.3d 1372, 1376-77 (Fed. Cir. 1998).

### B.  Mr. Rollins's Claims Are Barred By The Six-Year Statute Of Limitations

A plaintiff's cause of action accrues, and the statute of limitations begins to run, when all events fixing the Government's liability have occurred and plaintiff knew or should have been aware of their existence. Martinez v. United States, 333 F.3d 1295, 1303-04 (Fed. Cir. 2003)(citing Hopland Band of Pomo Indians v. United States, 855 F.2d 1573, 1576-77 (Fed. Cir. 1988).

Moreover, "it is well settled that the statute of limitations for Tucker Act claims is not tolled by the claimant's exercise of his right to seek permissive administrative review of his claim." Id. at 1312. Permissive administrative review, such as filing with the ABCMR, is independent of judicial review, and, therefore, does not toll the running of a limitation period in a judicial forum. Hurick v. Lehman, 782 F.2d 984, 987 (Fed. Cir. 1986); Heim v. United States, 50 Fed. Cl. 225, 236 (2001). Thus, Mr. Rollins's resort to permissive administrative remedies by the submission of two applications to the ABCMR does not toll the limitations period.

Both Mr. Rollins's wrongful discharge and disability retirement claims are barred by the six-year statute of limitations in this Court. A cause of action under the Tucker Act for money damages stemming from an alleged wrongful military discharge accrues for purposes of the statute of limitations upon discharge. <u>Martinez</u>, 333 F.3d at 1303; <u>Maclean v. United States</u>, 454 F.3d 1334, 1336 (Fed. Cir. 2006). In other words, it accrued when "all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue . . . for his money." <u>Martinez</u>, 333 F.3d at 1303 (internal quotations omitted).

Mr. Rollins was discharged from military service on July 1, 1982. Thus, his wrongful discharge claim accrued upon that date, and expired six years later, on July 1, 1988. Mr. Rollins waited 26 years to file his wrongful discharge claim with this Court. His failure to file suit within the six-year statute of limitations forever precludes him from seeking relief for losses stemming from the challenged discharge. <u>Martinez</u>, 333 F.3d at 1304.

A cause of action for "claims of entitlement to disability retirement pay generally does not accrue until the appropriate military board either finally denies such a claim or refuses to hear it." <u>Chambers v. United States</u>, 417 F.3d 1218, 1224 (Fed. Cir. 2005)(citing <u>Real v. United States</u>, 906 F.2d 1557, 1560

9

(Fed. Cir. 1990), and <u>Friedman v. United States</u>, 159 Ct. Cl. 1, 310 F.2d 381, 389 (1962)).  "The decision by the first statutorily authorized board that hears or refuses to hear the claim invokes the statute of limitations."  <u>See</u> <u>Real</u>, 906 F.2d at 1560.  When the correction board is the first board to consider a disability claim, the correction board's decision triggers the accrual of the cause of action.  <u>Id.</u>; <u>Aubre v. United States</u>, 40 Fed. Cl. 371, 376 n.6 (1998).

On December 12, 1984, Mr. Rollins submitted to the ABCMR his Application for Correction of Military Records.  He requested that his administrative discharge be changed to a medical discharge.  By virtue of requesting the ABCMR to change his administrative discharge to a medical discharge, he thereby asserted that his administrative discharge was wrongful.

Further, by requesting a medical discharge, he also suggested that he was due either a physical disability separation pay or a medical retirement.  If the Secretary of the Army determines that a soldier is medically unfit, he may retire the soldier or medically separate him with severance pay.  <u>See</u> 10 U.S.C. §§ 1201, 1203.

In its decision dated January 7, 1987, the ABCMR considered and decided whether Mr. Rollins's administrative discharge was appropriate, and whether he was entitled to a medical discharge, <u>i.e.</u>, either a physical disability separation or a disability

retirement.  After considering all of the available medical records, the ABCMR determined that "[Mr. Rollins] did not have any medically unfitting disability which would have required physical disability processing."  App. 5.  Further, "[s]ince [his] medical condition was not medically unfitting for retention at the time in accordance with AR 40-501, <u>there was no basis for medical retirement or separation</u>."  <u>Id.</u> (Emphasis added).

Thus, Mr. Rollins's disability retirement claim accrued when the board issued its decision denying him his requested relief, on January 7, 1987, and expired six years later on January 7, 1993.  Because Mr. Rollins filed his complaint seeking disability retirement more than 21 years after the ABCMR issued its decision, and well past the statute of limitations, his claim is barred by the statute of limitations, and should therefore be dismissed.

II.  <u>Statutory Tolling Does Not Apply</u>

Section 2501 of title 28 of the United States Code tolls the six-year statute of limitations for "person[s] under legal disability . . . at the time the claim accrues," and requires such persons to file their claims "within three years after the disability ceases."  28 U.S.C. § 2501.

This tolling provision is difficult to invoke, as the law presumes plaintiffs to be sane and competent, and plaintiffs wishing to proceed under this provision bear the high burden of

proving incapacity.  See Goewey v. United States, 612 F.2d 539, 544 (Ct. Cl. 1979).  Indeed, "to rise to the level of a legal disability for purposes of tolling the statute of limitations, a Plaintiff's . . . illness must be acute and extreme – it must render the plaintiff incapable of caring for his property, of transacting business, of understanding the nature and effect of his acts, and of comprehending his legal rights and liabilities.'"  Ware v. United States, 57 Fed. Cl. 782, 788 (2003) (citing Goewey, 612 F.2d 539).

Even if Mr. Rollins were able to invoke this provision, he would have to demonstrate that he was continually incapacitated between the time his claims accrued - 1982 for his wrongful discharge claim, and 1987 for his disability retirement claim - and at most three years prior to the filing of the complaint in this case - June 16, 2005.  The allegations at paragraphs 58, 62, 63, 65, 68, 69, 81, 85, 88, 103, 104, 117, 122, 126, 129, 133, 135, 138, 141, 142, 145, 146, 151, 157, 163, 171, 174, 180, 182, and 185 of his complaint, however, assert that, in the years following his separation from the military, Mr. Rollins actively pursued his disability claims before the Department of Veterans Affairs ("VA").  He also submitted his applications for correction of military records to the ABCMR in 1984, and again in 2006.  His submissions to the ABCMR in 1984 and 2006 were taken to further the very same legal rights he presses in this case.

Courts have declined the invitation to toll statutes of limitation upon the basis of incapacity where the plaintiff has demonstrated that he was able to file legal papers.  See Biester v. Midwest Health Servs., 77 F.3d 1264, 1268 (10th Cir. 1996) (finding equitable tolling inappropriate where the evidence demonstrated the plaintiff's ability to file his claim, in spite of his mental condition).  See also Price v. Lewis, 119 Fed. Appx. 725, 726 (6th Cir. 2005)("The exceptional circumstances that would justify equitable tolling on the basis of mental incapacity are not present when the party who seeks the tolling has been able to pursue his or her legal claims during the period of his or her alleged mental incapacity.")(internal quotation marks omitted); Bilbrey v. Douglas, 124 Fed. Appx. 971, 973 (6th Cir. 2005)(denying tolling to schizophrenic petitioner who was able to make court filings during period sought to be tolled).

Mr. Rollins was fully capable of acting to pursue his claims in a timely fashion, and the Tucker Act's tolling provision is unavailable to him.  Even if he could somehow demonstrate that he was sufficiently incapacitated to toll the statute, he demonstrated that he was capable of understanding and pursuing his legal rights when he submitted his requests and filings to the VA and the ABCMR.  Under those circumstances, he should have filed his complaint in this Court no later than July 1, 1988.

III.  Equitable Tolling Does Not Apply

The United States Supreme Court recently held that equitable tolling is not applicable to claims filed pursuant to this Court's six-year statute of limitations, 28 U.S.C. § 2501. In John R. Sand & Gravel Company v. United States, 128 S. Ct. 750 (2008), the Supreme Court held that because prior Supreme Court case law interpreted the time limits set forth in the predecessor of 28 U.S.C. § 2501, as well as the language of that statute, to be jurisdictional, the six-year limitations period is absolute, and not subject to equitable tolling.  Id. at 753-54 (citing Soriano v. United States, 352 U.S. 270, 273-74 (1957); Finn v. United States, 123 U.S. 227 (1887); Kendall v. United States, 107 U.S. 123, 125-26 (1883)).  The Supreme Court distinguished its earlier holding in Irwin v. Department of Veterans Affairs, 498 U.S. 89 (1990), and explained that, although the language of the civil rights statute in Irwin was "linguistically similar to the [C]ourt of [C]laims statute at issue here," the statutes are different "in the key respect that the Court had not previously provided a definitive interpretation [of the civil rights statute at issue in Irwin.]"  John R. Sand & Gravel, 128 S. Ct. at 755. The Court also explained that the "rebuttable presumption" in favor of equitable tolling adopted in the Irwin case meant "that the presumption is not conclusive[,]" and that a "definitive earlier interpretation of the statute, . . . should offer a . . .

14

sufficient rebuttal." <u>Id.</u> at 756.

For these reasons, equitable tolling is not applicable in this case.

CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court grant its motion to dismiss the complaint.

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Donald E. Kinner/Kirk T. Manhardt

DONALD E. KINNER
Assistant Director

s/Lauren S. Moore

OF COUNSEL:

MAJOR JENNIFER BOTTOMS
United States Army
  Litigation Division
Military Personnel Branch
901 N. Stuart Street
Suite 400
Arlington, VA 22203-1837

LAUREN S. MOORE
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
    8th Floor
Washington, D.C.  20530
Tele: (202) 616-0333
Fax: (202) 514-8640

Attorneys for Defendant

AUGUST 11, 2008

15

# APPENDIX

<u>INDEX TO DEFENDANT'S APPENDIX</u>

<u>Document</u>                                                      <u>Page(s)</u>

1. Letter to Mr. Rollins from Army Board for
   Correction of Military Records ("ABCMR"),
   dated March 3, 1987 ...............................    1

2. Decision of ABCMR dated January 7, 1987 ...........   2-6

3. Mr. Rollins's Application to the ABCMR,
   dated December 12, 1984 ...........................    7

4. Letter to Mr. Rollins's from ABCMR,
   dated January 29, 2008 ............................    8

5. ABCMR Decision dated January 25, 2008 .............  9-19

March 3, 1987

Army Board for Correction
of Military Records Section

SUBJECT: Rollins, Roland S., Sr.    221 54 7388

Mr. Roland S. Rollins, Sr.
711-A West 4th Street
West Town Plaza Apartments
Wilmington, Delaware 19801

Dear Mr. Rollins:

    I have been asked by the Army Board for Correction of
Military Records to reply to your request for correction of
your Army records.

    Your application has been denied under the adminis-
trative rules given by the Secretary of the Army for
guidance of the Army Board for Correction of Military
Records.  These rules state the Board may deny an
application if it determines that not enough proof was
presented to show that an error or injustice exists in the
record.  A copy of the Memorandum of Consideration stating
the Board's reasons for denial is enclosed.

    In the absence of new evidence showing that an error or
injustice exists, further consideration by the Board is not
possible.

    Your counsel has also been sent a copy of this letter.

    If you desire consideration for a change in the reason
and authority for your discharge, you may apply to the Army
Discharge Review Board.  An application is enclosed.

BY ORDER OF THE SECRETARY OF THE ARMY:

COPY FOR:
☑ ABCMR
☐ ADRB

ORIGINAL SIGNED

AMVETS
VAHO Rm. 1301B
941 N. Capitol St. N.E.
Washington, DC 20421

Richard V. Pederson
Lieutenant Colonel, U.S. Army
Chief, Personnel Services
Division

Enclosures

11 FEB 1987

SFMR-RBR - 1st End (7 Jan 87, Docket Number AC85-10927)
SUBJECT:  ABCMR Memorandum of Consideration

HQDA, ABCMR, Washington, D.C.  20310-1803    29 JAN 1987

TO:  Commander, US Army Reserve Personnel Center
     ATTN:  DARP-PAS-AA, St. Louis, MO  63132-5200

1.  It is requested that the individual concerned and
counsel, if any, be notified that, after thoroughly
examining and considering the application and available
records, the Army Board for Correction of Military
Records (ABCMR) has determined that there is
insufficient evidence to indicate probable material
error or injustice and that the application is,
therefore, denied.

2.  It is further requested that the individual
concerned and counsel, if any, as well as any members of
Congress who have shown interest, be furnished a copy of
the ABCMR's Memorandum of Consideration.

3.  The notice to the individual concerned will be in
the form prescribed in the memorandum, dated 8 June
1978, from the Deputy Assistant Secretary of the Army
(RB&PS) to The Adjutant General.

4.  In addition, request action be taken as indicated in
the Note in the Determination portion of the Memorandum
of Consideration.

Encls

                    David R. Kinneer
                    Acting Executive Secretary

2



## DEPARTMENT OF THE ARMY
### BOARD FOR CORRECTION OF MILITARY RECORDS
#### WASHINGTON, D.C. 20310-1803

### MEMORANDUM OF CONSIDERATION

IN THE CASE OF:  ROLLINS, ROLAND S.
███████████

BOARD DATE:       7 January 1987
DOCKET NUMBER:    AC85-10927
INDEX NUMBER:     108.04

I certify that hereinafter is recorded the record
of consideration of the Army Board for Correction of
Military Records in the case of the above-named
individual.  The following members, a quorum, were
present.

| | |
|---|---|
| Mr. Dominic R. Ciccotelli | Chairperson |
| Mr. James F. MacDonald | Member |
| Mr. Charles V. Szenas | Member |
| | |
| Mr. David R. Kinneer | Acting Executive Secretary |
| Mr. Donald L. Lewy | Examiner |

The Board, established pursuant to authority
contained in 10 U.S.C. 1552, convened at the call of
the Chairman on the above date.  Army Regulation
15-185, the regulation governing the operation of the
Board, provides that applications and the available
military records pertinent to the corrective action
requested will be reviewed to:  determine whether to
authorize a formal hearing; recommend that the records
be corrected without a formal hearing; or, to deny the
application without a formal hearing if it is
determined that insufficient relevant evidence has been
presented to demonstrate the existence of probable
material error or injustice.

The applicant requests correction of military
records as stated in the application to the Board and
as restated herein.

The Board considered the following evidence:

Exhibit A - Application for correction of
            military records
Exhibit B - Military Personnel Records

3

ABCMR Memorandum of                          AC85-10927
Consideration (cont)

APPLICANT REQUESTS:  That his records be corrected to
show that he was discharged by reason of physical
disability; based thereon, that his reenlistment
eligibility (RE) code and United States Army Reserve
obligation be changed, and that AR 635-200 be amended
to permit his reenlistment.

APPLICANT STATES:  He was forced to accept an
administrative discharge when he actually had an acute
dislocating shoulder.

EVIDENCE OF RECORD:  Incorporated herein by reference
are military and medical records which show:

The applicant served on active duty from 28 February
1979 to 1 July 1982.  He was a 71B10 Medical Specialist
and his highest grade held was specialist four E-4.  He
was honorably discharged for a personality disorder
under provisions of chapter 13, AR 635-200, on 1 July
1982.

The pertinent medical aspects of the case are
summarized in the attached comments from the Office of
The Surgeon General (OTSG), which was of the opinion
that the applicant was medically fit for retention or
appropriate separation at the time.  (COPY ATTACHED)

The Enlistment Eligibility Activity, on 17 December
1985, advised that the applicant holds RE codes of RE-3
and RE-3C, reflecting the need for waivers of his last
discharge and a grade and service criterion since he
was discharged in grade E-1 with over six months of
service.

DISCUSSION:  Considering all the evidence, allegations,
and information presented by the applicant, together
with the evidence of record, applicable law and
regulations, and advisory opinions, it is concluded:

1.  In the absence of medical evidence to the contrary,
it is presumed that the available service records are
correct as presently constituted.

2.  No medical evidence has been presented by the
applicant that demonstrates any injustice in the
medical treatment received in service.

2

4

ABCMR Memorandum of                                    AC85-10927
Consideration (cont)

3. The medical evidence of record indicates that the applicant was medically fit for retention at the time of his separation. He has submitted no probative medical evidence to the contrary.

4. The applicant did not have any medically unfitting disability which would have required physical disability processing.

5. Since the applicant's medical condition was not medically unfitting for retention at the time in accordance with AR 40-501, there was no basis for medical retirement or separation.

6. The foregoing conclusion is supported by the opinion of the Office of The Surgeon General.

7. This Board has considered only the medical issue, as the Discharge Review Board (ADRB) has not adjudicated the reason and authority for separation.

8. Since the ADRB has not considered the propriety of the reason and authority for his separation, and since he has not established that they are in error given the way his records are now constituted, there is no basis to change them at this time.

9. Since he has been discharged, he has no further Reserve obligation.

10. Changing regulations does not involve correction of military records and, therefore, is not within the purview of this Board. Furthermore, this Board is not the proponent of AR 635-200.

11. In view of the foregoing, there is no basis upon which to grant the applicant's request.

<u>DETERMINATION</u>: The applicant has failed to submit sufficient relevant evidence to demonstrate the existence of probable material error or injustice.

<u>NOTE</u>: The Reserve Personnel Center will be requested to forward a DD Form 293 appended to his DD Form 149 to the ADRB for appropriate action.

5

ABCMR Memorandum of                            AC85-10927
Consideration (cont)

BOARD VOTE:

_____ _____ _____     GRANT _____

_____ _____ _____     GRANT FORMAL HEARING

_____ _____ _____     DENY APPLICATION

David R. Kinneer
Acting Executive Secretary

4

DEC 1 8 1984

| APPLICATION FOR CORRECTION OF MILITARY OR NAVAL RECORD UNDER THE PROVISIONS OF TITLE 10, U.S. CODE, SEC. 1552 *(See instructions on reverse side BEFORE completing application.)* | Form Approved · OMB NO. 0704-0003 |
|---|---|

**DATA REQUIRED BY THE PRIVACY ACT OF 1974**

AUTHORITY: Title 10, U.S. Code 1552, Executive Order 9397, 22 Nov 43 (SSN)
PRINCIPAL PURPOSE: To apply for correction of a military or naval record.
ROUTINE USES: To docket a case. Reviewed by board members to determine relief sought. To determine qualification to apply to board. To compare facts present with evidence in the record.
DISCLOSURE: Voluntary. If information is not furnished, applicant may not secure benefits from the Board.

BRANCH OF SERVICE

☒ ARMY ☐ NAVY ☐ AIR FORCE ☐ MARINE CORPS ☐ COAST GUARD

| 1. NAME *(Last, first, middle initial) (Please print)* Rollins Roland S. (Sr.) | 2. PRESENT RATE, GRADE E-1 | 3. SERVICE NUMBER ▓▓▓▓ | 4. SOCIAL SECURITY NUMBER Same as #3 |
|---|---|---|---|

| 5. TYPE OF DISCHARGE *(If by court-martial, state type of court.)* Honorable Discharge AR 635-200 Para-13-4B | 6. PRESENT STATUS, IF ANY, WITH RESPECT TO THE ARMED SERVICES *(Active duty, retired/Reserve, etc.)* DISAbled Veteran | 7. DATE OF DISCHARGE OR RELEASE FROM ACTIVE DUTY 7-1-82 |
|---|---|---|

| 8. ORGANIZATION AT TIME OF ALLEGED ERROR IN RECORD Aco 307th Med. Bn. 82nd ABN DIV (Ft. Bragg, N.C. 283_) | 9. I DESIRE TO APPEAR BEFORE THE BOARD IN WASHINGTON, D.C. *(No expense to the Government)* ☒ YES ☐ NO |
|---|---|

10. NAME AND ADDRESS OF COUNSEL *(if any)* Joe Inverso Jr. Veterans Regional office (Amvets) Wilm, De. 198__

11. I REQUEST THE FOLLOWING CORRECTION OF ERROR OR INJUSTICE: Change Administrative Discharge to Medical Discharge (AR 635-200 Para-13-4b) Also change Re-Enlistment Codes & Reserve Obligation Also change AR 635-200 Para 13-4B Amend to Re-up After 2yr

12. I BELIEVE THE RECORD TO BE IN ERROR OR UNJUST IN THE FOLLOWING PARTICULARS. Some Medical papers missing
I had A Acute dislocating Shoulder, After damaging it on Active Duty, and because of Turmoil in my Unit, I was forced to Accept an Administrative Dischage, There was No extensive Physical Done on my Shoulder by the physician whom okayd Dischar_

13. IN SUPPORT OF THIS APPLICATION I SUBMIT AS EVIDENCE THE FOLLOWING: *(In Veterans Administration records are pertinent to your case, give Regional Office location and Claim Number.)* Veterans Regional Office file ▓▓▓▓ UAMROC 29-650-878 Wilmington, De. 19805

| 14. a. THE DATE OF THE DISCOVERY OF THE ALLEGED ERROR OR INJUSTICE WAS 7-1-82 | b. IF MORE THAN THREE YEARS SINCE THE ALLEGED ERROR OR INJUSTICE WAS DISCOVERED, STATE WHY THE BOARD SHOULD FIND IT IN THE INTEREST OF JUSTICE TO CONSIDER THIS APPLICATION None for (b) |
|---|---|

15. APPLICANT MUST SIGN IN THE SPACE PROVIDED. IF THE RECORD IN QUESTION IS THAT OF A PERSON WHO IS DECEASED OR INCOMPETENT, LEGAL PROOF OF DEATH OR INCOMPETENCY MUST ACCOMPANY APPLICATION. IF APPLICATION IS SIGNED BY SPOUSE, WIDOW OR WIDOWER, NEXT OF KIN OR LEGAL REPRESENTATIVE, INDICATE RELATIONSHIP OR STATUS IN APPRO PRIATE BOX. ☐ SPOUSE ☐ WIDOW ☐ WIDOWER ☐ NEXT OF KIN ☐ LEGAL REP ☐ OTHER *(Specify)* None

16. I MAKE THE FOREGOING STATEMENTS, AS PART OF MY CLAIM, WITH FULL KNOWLEDGE OF THE PENALTIES INVOLVED FOR WILFULLY MAKING A FALSE STATEMENT OR CLAIM *(U.S. Code, Title 18, Sec. 287, 1001, provides a penalty of not more than $10,000 fine or not more than 5 years imprisonment or both.)* RSR

| 17. COMPLETE ADDRESS, INCLUDING ZIP CODE *(Applicant should forward notification of all changes of address.)* 711-A W. 4th St. West Town Plaza Apts. Wilm, De. 19801 | DOCUMENT NUMBER *(DO NOT WRITE IN THIS SPACE)* |
|---|---|
| 18. DATE 12-12-84 | 19. SIGNATURE *(Applicant must sign here.)* R.S. Roll Sr. | AC85-10927 |

DD FORM 1 FEB 78 **149** EDITION OF 1 APR 69 IS OBSOLETE AND REPLACES DD FORM 149, PRIVACY ACT STATEMENT, 26 SEP 75, WHICH IS OBSOLETE.

7



**DEPARTMENT OF THE ARMY**
BOARD FOR CORRECTION OF MILITARY RECORDS
1901 SOUTH BELL STREET 2ND FLOOR
ARLINGTON, VA 22202-4508

January 29, 2008



AR20070003177, Rollins, Roland S.


Mr. Roland S. Rollins Sr.
1321 Lancaster Ave.  B
Wilmington DE 19805


Dear Mr. Rollins:

   Pursuant to your request for reconsideration of ABCMR Docket Number AC85-10927, the Army Board for Correction of Military Records (ABCMR) reconsidered your case on January 25, 2008.  I regret to inform you that the Board denied your request for relief.  A copy of the Board's Record of Proceedings which explains the Board's reasons for denying your request is enclosed.  This decision in your case is final.

   Paragraph 2-15b of Army Regulation 15-185 governs requests for reconsideration by the ABCMR.  This regulation allows an applicant to request reconsideration of an earlier ABCMR decision only if the request is received within one year of the original decision and it has not already been reconsidered.

   Since your request has now been reconsidered, you are not eligible for further reconsideration of this same matter by this Board.  However, you have the option to seek relief in a court of appropriate jurisdiction.

                              Sincerely,

                              Catherine C. Mitrano
                              Director, Army Board for Correction
                                 of Military Records

Enclosure


EXHIBIT A PAGE ONE

 
Printed on Recycled Paper



**DEPARTMENT OF THE ARMY**
BOARD FOR CORRECTION OF MILITARY RECORDS
1901 SOUTH BELL STREET 2ND FLOOR
ARLINGTON, VA 22202-4508

EXHIBIT A

RECORD OF PROCEEDINGS

IN THE CASE OF:    ROLLINS, ROLAND S.

BOARD DATE:        25 January 2008
DOCKET NUMBER:  AR20070003177

I certify that hereinafter is recorded the true and complete record of the proceedings of the Army Board for Correction of Military Records in the case of the above-named individual.

| | |
|---|---|
| Ms. Catherine C. Mitrano | Director |
| Ms. Beverly A. Young | Analyst |

The following members, a quorum, were present:

| | |
|---|---|
| Mr. David Haasenritter | Chairperson |
| Mr. James Hastie | Member |
| Mr. Edward Montgomery | Member |

The Board considered the following evidence:

Exhibit A - Application for correction of military records.

Exhibit B - Military Personnel Records (including advisory opinion, if any).

ABCMR Record of Proceedings (cont)                          AR20070003177

THE APPLICANT'S REQUEST, STATEMENT, AND EVIDENCE:

1.  The applicant requests, in effect, reconsideration of an earlier request that his discharge be changed to a medical discharge.

2.  The applicant states that he was mistakenly administratively discharged and he could have been qualified for a chapter 13 discharge for service-connected disabilities. He states that he is now rated at 60 percent disabled by the Department of Veteran Affairs (DVA). He alleges that he was chronically disabled and should have been sent home due to disabilities and not for unsuitability. He also states that a complete physical was not properly done and he was on a P-3 profile for his right shoulder, back, feet, and ankles. He states that these conditions were overlooked and are currently a part of CUE (clear and unmistakable error) pending before the DVA. He states that it took DVA many years to help him, through no fault of his own, and it has been out of control for over 24 years.

3.  The applicant provides a sworn affidavit; a supplemental letter, dated 15 December 2006; and numerous medical documents.

COUNSEL'S REQUEST, STATEMENT AND EVIDENCE:

1.  Counsel states, in effect, that the applicant submits a request for correction of his discharge in the interest of justice because he has been at least 60 percent disabled as a result of several service-connected conditions at the time of his release from active duty. Counsel states the applicant did not receive a medical board nor was his disability reviewed by a Physical Evaluation Board (PEB).

2.  Counsel provides a brief in support of the applicant's application in which he describes the history of the applicant's medical condition. In August 1979, the applicant dislocated his shoulder playing football. He was later diagnosed as suffering from chondromalacia [anterior knee pain due to irritation of the cartilage on the undersurface of the kneecap] of the left knee and bilateral flat feet. In April 1980, the applicant stepped in a hole and injured his left knee and shin. He went on sick call and was given a diagnosis of contusion mid-tibia. On 7 April 1980, the applicant dropped a heavy loudspeaker on his right foot. The applicant was seen for a soft tissue injury to his foot at sick call and was treated. He was put on a temporary profile "no running" and "no jumping" for 7 days.

3.  Counsel states the applicant was involved in a jeep accident on 12 May 1980 at Fort Bragg, North Carolina. The applicant re-injured his back and left foot on 26 August 1980 while moving heavy equipment. He went on sick call the next day and was diagnosed as suffering from contusions and a sprain. The applicant

2

ABCMR Record of Proceedings (cont)                    AR20070003177

was initially diagnosed as having viral syndrome in November 1980. On
16 March 1981, carburetor cleaner splashed on the applicant's face and hands,
causing acid burns. The applicant later developed an itchy rash on his face and
body. He was seen by a dermatologist at Womack Army Hospital and was
diagnosed as having acne vulgaris.

4. Counsel states the applicant submitted a compensation claim for
service-connected recurrent right shoulder dislocation, skin disease, a
prescription for eye lenses, and viral syndrome. He submitted a Statement in
Support of Claim (SSC) in September 1982 requesting that "personality disorder"
be added to the list of service-connected conditions. The applicant was referred
to a psychologist in the Outpatient Mental Health Clinic and was scheduled for an
MMPI test (psychological test). The psychologist interpreted the test results as
"anxiety reaction in a schizoid personality."

5. Counsel further states that the Wilmington Veterans Affairs Regional Officer
(VARO) made a rating decision which granted the applicant zero percent service
connection for acne vulgaris and chronic right shoulder pain. The Rating
Decision denied service connection for personality disorder, refractive error, and
viral syndrome. The applicant filed a Notice of Disagreement (NOD) on
20 October 1982. VARO dismissed his claims in January 1983 for failure to
report for a physical examination. By 1988, a civilian physician diagnosed the
applicant as suffering from Type II Diabetes (Diabetes Mellitus).

6. In May 1994, the Wilmington VARO granted the applicant a 20 percent
service connection disability rating for residuals from his chronic dislocated right
shoulder and 10 percent for his skin rash. Counsel states that the applicant
received an orthopedic compensation and pension examination at the
Wilmington Veterans Affairs Medical Center (VAMC). He was found to have
traumatic arthritis of the right shoulder and chronic cervical strain with trapezius
myalgia. Counsel also states the applicant filed a claim for service connection for
personality disorder. The Wilmington VARO denied his claim for a personality
disorder because the applicant had not submitted any new material evidence.

7. In 2003, the Wilmington VARO increased the applicant's disability rating from
20 percent to 30 percent for residuals of the applicant's right shoulder dislocation.
Counsel states the applicant was examined on 1 September 2003 at the
Wilmington VARO. The physician diagnosed the applicant as having acne
vulgaris; neurodermatitis; and a scar on his right anterior shoulder, noting that the
applicant's shoulder scar was not affecting his range of motion. On 8 September
2003, the Wilmington VARO found that the applicant had a 60 percent combined
service-connected disability rating. His disability rating increased to 30 percent

EXHIBIT A PAGE FOUR

//

ABCMR Record of Proceedings (cont)                    AR20070003177

for acne vulgaris, 30 percent for residuals of right shoulder dislocation, and
continued 10 percent disability rating for painful scar on his right shoulder.

8. Counsel states the applicant seeks review of his discharge for a personality
disorder because he was suffering from major depression, a severe chronic
mental disease or disorder, at the time of his discharge. Counsel states the
applicant's discharge was not voluntary within the meaning of Title 28, United
States Code, section 1491. Counsel states the applicant was entitled to a review
of his mental condition by a medical board due to an extended history of
symptoms of major depression incurred on active duty. Counsel continues to
stated that the applicant requests to be placed on disability retirement and that
he be awarded appropriate relief under Title 10, United States Code, section
1201.

9. Counsel alleges that the applicant was discharged in violation of Army
Regulations as outlined in the Military Personnel Manual. The applicant's service
medical records do not reflect he had a pre-discharge medical evaluation.
Counsel states there is no evidence that the Army psychologist or Army
physician opined the applicant had a personality disorder in April 1982. Counsel
further alleges the applicant was not referred to an orthopedic surgeon or to a
dermatologist for an opinion on his chronic shoulder separation and his chronic
skin rash.

10. Counsel alleges that the Army's failure to seek a complete mental and
physical assessment prior to the applicant's discharge resulted in his separation
from the service without a full evaluation of the nature and extent of his disability.

11. Counsel provides the applicant's DVA medical records, his military service
and medical records, and his civilian medical records.

CONSIDERATION OF EVIDENCE:

1. Incorporated herein by reference are military records which were summarized
in the previous consideration of the applicant's case by the Army Board for
Correction of Military Records (ABCMR) in Docket Number AC85-10927 on
7 January 1987.

2. The applicant submitted new evidence (the medical records) that will be
considered by the Board.

3. The applicant underwent a medical examination on 1 February 1979 for the
purpose of enlistment. He completed a Standard Form 93 (Report of Medical
History) in which he marked "Yes" under item 11 indicating that he had or

4

ABCMR Record of Proceedings (cont)                          AR20070003177

currently had swollen or painful joints; frequent or severe headache; chronic or frequent colds; severe tooth or gum trouble; head injury; broken bones; bone, joint, or other deformity.

4.  The applicant enlisted in the Regular Army on 28 February 1979. He completed basic combat training at Fort Dix, New Jersey and was reassigned to Fort Sam Houston, Texas for advanced individual training (AIT). At the completion of AIT, he was awarded military occupational specialty 91B (medical specialist). He later completed basic airborne training and was assigned to the 82d Airborne Division at Fort Bragg, North Carolina as a medical aidman.

5.  On 11 May 1979, the applicant was placed on a temporary physical profile for subsiding viral syndrome with residual weakness and was given a physical profile of T311111, to expire on 21 May 1979. His assignment limitations were listed as no running, marching or physical training (PT). The profile indicated the applicant would require extra rest and he should not perform any duties other than attending classes.

6.  On 21 May 1979, the applicant was placed on a temporary physical profile for viral syndrome, to expire on 31 May 1979. His assignment limitations were listed as no running, marching, PT, or standing in formation over 5 minutes.

7.  The applicant was promoted to specialist four on 1 August 1980. He was discharged on 6 October 1981 for the purpose of immediate reenlistment.

8.  He reenlisted on 7 October 1981 for a period of five years.

9.  On 2 February 1982, the applicant was treated for a complaint of recurrent right shoulder dislocation.

10. On 11 February 1982, the applicant accepted nonjudicial punishment (NJP) under Article 15, Uniform Code of Military Justice (UCMJ) for failing to go to his appointed place of duty.

11. The applicant underwent a psychiatric evaluation on 26 April 1982. The psychiatrist stated the applicant met retention standards under the provisions of Army Regulation 40-501 and there was no psychiatric disease or disorder which warranted disposition through medical channels. Also, the psychiatrist stated the applicant was mentally responsible, was able to distinguish right from wrong and adhere to the right, and had the mental capacity to participate in board or court proceedings. The clinical interview found the applicant suffered from a mixed personality disorder with borderline, narcissistic, histrionic, and antisocial

EXHIBIT A PAGE SIX

ABCMR Record of Proceedings (cont)                    AR20070003177

features.  The psychiatrist recommended administrative discharge under the
provisions of Army Regulation 635-200, chapter 13, paragraph 4b.

12.  On 28 April 1982, the applicant accepted NJP under Article 15, UCMJ for
disobeying a lawful command.

13.  On 3 May 1982, the applicant's parachutist pay was terminated after his
parachutist special qualification identifier was withdrawn.

14.  On 20 May 1982, the applicant was treated for a complaint of recurrent right
shoulder dislocation.

15.  On 24 May 1982, the applicant accepted NJP under Article 15, UCMJ for
failing to go to his appointed place of duty.

16.  On 2 June 1982, the applicant's unit commander notified him of pending
separation action under the provisions of Army Regulation 635-200,
paragraph 13 for unsuitability-personality disorder .  He was advised of his rights.

17.  The applicant acknowledged receipt of the notification, consulted with legal
counsel, requested consideration of his case by a board of officers, and
submitted statements in his own behalf.  He stated that he preferred a board of
officers to hear his case and a board of medical officers to review his recent and
past medical documents.  He also stated that he would like to receive an
honorable discharge if an administrative discharge was in effect.  He further
stated that his previous honorable discharge should be recognized for his past
performance as a member of his unit for over three years.

18.  On 2 June 1982, the unit commander recommended that the applicant be
separated from the service due to unsuitability-personality disorder under the
provisions of chapter 13, Army Regulation 635-200.  The unit commander stated
the applicant's duty performance was grossly substandard.  He also stated the
applicant was constantly late for work and formations, had no regard for
authority, and showed absolutely no desire to improve.  The unit commander
requested a waiver of the rehabilitative transfer requirement.

19.  On 2 June 1982, the applicant underwent a mental status evaluation.  It was
determined that the applicant was mentally responsible, had the mental capacity
to understand and participate in board proceedings, and met the retention
requirements of chapter 3, Army Regulation 40-501.

20.  The applicant underwent a separation medical examination on 2 June 1982.
His Report of Medical Examination indicates he had chronic right shoulder

6

ABCMR Record of Proceedings (cont)                    AR20070003177

dislocation and had been on profile for about three years. The examining physician recommended the applicant have follow-up at an orthopedic clinic. The applicant was qualified for separation. He was given a PULHES 131121 but was found to be qualified for the chapter 13 discharge.

21. On 11 June 1982, the separation authority approved the separation, waived rehabilitation requirements, and directed issuance of an Honorable Discharge Certificate.

22. On 21 June 1982, the applicant was placed on a temporary physical profile for recurring dislocation of his right shoulder and was given a physical profile of 1T31111, to expire on 21 July 1982. His assignment limitations were listed as no crawling, no hand to hand combat or contact sports, no handling of heavy materials, no overhead work, no push-ups or pull-ups, no climbing of rope or ladder.

23. The applicant was honorably discharged on 1 July 1982 under the provisions of Army Regulation 635-200, paragraph 13-4b for unsuitability-personality disorder. He completed 8 months and 25 days of active military service during the period under review. He completed 3 years, 4 months, and 4 days total active military service.

24. The applicant submitted a sworn affidavit, dated 14 December 2006, in support of his claim. He gives a description of his medical conditions to include his shoulder dislocation, flat feet, knee injury, back injury, pro-dromal diabetes symptoms, facial acid burns, and acne vulgaris.

25. Chapter 13 of Army Regulation 635-200 applied to separation for unsuitability. At that time, paragraph 13-4b provided for the separation of individuals for personality disorder. This regulation stated that as determined by medical authority (i.e., the diagnosis will have been established by a physician trained in psychiatry and psychiatric diagnosis) and described in the Diagnostic and Statistical Manual (DSM II) of Mental Disorders, 2nd Edition, Committee on Nomenclature and Statistics, American Psychiatric Association, Washington, DC 1968) this condition is a deeply ingrained, maladaptive pattern of behavior of long duration which interferes with the member's ability to perform duty. Exception: Combat exhaustion and other acute situation maladjustments. From an Army medical viewpoint, every member who is correctly diagnosed as having a personality disorder is capable of controlling his/her actions, and no member may be discharged pursuant to this paragraph unless he/she meets Army medical standards for retention.

7

EXHIBIT A PAGE EIGHT

ABCMR Record of Proceedings (cont)                    AR20070003177

26.  Effective 1 April 1982, Army Regulation 635-200 was changed to eliminate the requirement to offer an administrative discharge board for Soldiers with less than 6 years service for separation under the unsuitability provision.

27.  Army Regulation 635-40 (Physical Evaluation for Retention, Retirement, or Separation) governs the evaluation of physical fitness of Soldiers who may be unfit to perform their military duties because of physical disability.  The unfitness is of such a degree that a Soldier is unable to perform the duties of his/her office, grade, rank or rating in such a way as to reasonably fulfill the purposes of his/her employment on active duty.  In pertinent part, it states that the mere presence of an impairment does not, of itself, justify a finding of unfitness because of physical disability.  In each case, it is necessary to compare the nature and degree of physical disability present with the requirements of the duties the Soldier reasonably may be expected to perform because of his or her office, grade, rank, or rating.

28.  Chapter 7 (Physical Profiling) of Army Regulation 40-501 (Standards of Medical Fitness) provides that the basic purpose of the physical profile serial system is to provide an index to the overall functional capacity of an individual and is used to assist the unit commander and personnel officer in their determination of what duty assignments the individual is capable of performing and if reclassification action is warranted.  Four numerical designations (1-4) are used to reflect different levels of functional capacity in six factors (PULHES): P-physical capacity or stamina, U-upper extremities, L-lower extremities, H-hearing and ears, E-eyes, and S-psychiatric.  Numerical designator "1" under all factors indicates that an individual is considered to possess a high level of medical fitness and, consequently, is medically fit for any military assignment.  Numerical designators "2" and "3" indicate that an individual has a medical condition or physical defect which requires certain restrictions in assignment within which the individual is physically capable of performing military duty.  The individual should receive assignments commensurate with his or her functional capacity.

29.  Army Regulation 40-501 (Standards of Medical Fitness), paragraph 3-31 of the version in effect at the time, stated that personality disorders could render an individual administratively unfit rather than unfit because of physical disability. Interference with performance of effective duty in association with this condition would be dealt with through appropriate administrative channels.

30.  Army Regulation 40-501, paragraph 3-12(b) of the version in effect at the time, did not list shoulder dislocation or recurrent shoulder dislocations as a cause for referral to a Medical Evaluation Board.

8

ABCMR Record of Proceedings (cont)                    AR20070003177

31.  Title 38, U. S. Code, sections 1110 and 1131, permits the DVA to award compensation for a medical condition which was incurred in or aggravated by active military service.  The DVA, however, is not required by law to determine medical unfitness for further military service.

DISCUSSION AND CONCLUSIONS:

1.  The applicant was discharged under the provisions of paragraph 13-4b of Army Regulation 635-200 for unsuitability due to personality disorder.

2.  The applicant consulted with military counsel, requested a hearing by a board of officers (which at that time was no longer required for Soldiers with less than 6 years of service), and submitted statements in his own behalf.

3.  The evidence of record shows the applicant was evaluated by a psychiatrist and was diagnosed as having a mixed personality disorder with borderline, narcissistic, histrionic, and antisocial features.  However, a personality disorder is not a condition that is a cause for referral to a physical disability board. Interference with performance of effective duty in association with this condition will be dealt with through appropriate administrative channels.  The applicant was administratively separated for this reason.

4.  It is acknowledged that the applicant's medical problems began around 1979. He was placed on temporary physical profile for subsiding viral syndrome with residual weakness.  There is no evidence that he was subsequently placed on a profile, temporary or permanent, for this condition.  He was also placed on a temporary physical profile for recurring dislocation of his right shoulder in June 1982.

5.  The applicant's Report of Medical Examination indicates he had chronic right shoulder dislocation and had been on profile for about three years.  Other medical evidence indicates that he had been treated for recurrent right shoulder dislocation.  However, there is no evidence to show that he had been on profile for this condition for other than the one temporary profile noted above.

6.  At the time, recurrent shoulder dislocations was not a condition listed as a cause for referral to a Medical Evaluation Board.

7.  It is also noted that the applicant was promoted to specialist four on 1 August 1980, he was qualified to reenlist on 7 October 1981, and his parachutist pay was not terminated until May 1982.  The two former actions were taken when the applicant was allegedly on a profile for chronic right shoulder dislocation.  The latter action was not taken until after he had been assigned to an airborne unit for

9

EXHIBIT A PAGE TEN

ABCMR Record of Proceedings (cont)                    AR20070003177

almost 3 years, indicating that he felt sufficiently capable of performing his duties by accepting the parachutist pay. All three of those actions are indicators that neither his shoulder condition nor any other condition rendered him unfit to perform his military duties.

8. The applicant was found qualified for separation under the provisions of Army Regulation 635-200, chapter 13. The examining physician recommended the applicant follow-up at an orthopedic clinic regarding his right shoulder dislocations; however, that would have been a proper recommendation for a Soldier whose shoulder condition did not render him unfit for his military duties yet required follow-on treatment by other agencies, such as the DVA.

9. Although the applicant contends that he should have been medically discharged, the preponderance of evidence shows that his medical conditions did not render him medically unfit to perform his duties or justify physical disability processing.

10. It is noted that the applicant applied to the DVA for service connected compensation and was awarded a combined disability rating of 60 percent for residuals of right shoulder dislocation, for acne vulgaris, and painful scar on his right shoulder.

11. However, the rating action by the DVA does not necessarily demonstrate an error or injustice on the part of the Army. The DVA, in accordance with its own policies and regulations, awards compensation solely on the basis that a medical condition does exists and that said medical condition reduces or impairs the social or industrial adaptability of the individual concerned. Consequently, due to the two concepts involved, an individual's medical condition, although not considered medically unfitting for military service at that time of processing for separation, discharge or retirement, may be sufficient to qualify the individual for DVA benefits based on an evaluation by that agency.

BOARD VOTE:

_____ _____ _____    GRANT FULL RELIEF

_____ _____ _____    GRANT PARTIAL RELIEF

_____ _____ _____    GRANT FORMAL HEARING

_____ _____ _____    DENY APPLICATION

10

EXHIBIT A PAGE ELEVEN

ABCMR Record of Proceedings (cont)                AR20070003177

<u>BOARD DETERMINATION/RECOMMENDATION:</u>

The evidence presented does not demonstrate the existence of a probable error
or injustice.  Therefore, the Board determined that the overall merits of this case
are insufficient as a basis to amend the decision of the ABCMR set forth in
Docket Number AC85-10927, dated 7 January 1987.



_____
                CHAIRPERSON

CERTIFICATE OF ELECTRONIC FILING

I hereby certify that on AUGUST 12, 2008, a copy of "DEFENDANT'S MOTION TO DISMISS" was filed electronically.  I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system, and that the parties may access this filing through the Court's system.

/s/ Lauren S. Moore