No. 08-433C (Judge Bruggink)

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

ROLAND S. ROLLINS, SR.,
Plaintiff,

v.

THE UNITED STATES,
Defendant.

**PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Thomas J. Reed
Widener University School of Law
Veterans Law Clinic
P.O. Box 7474
Wilmington, DE 19803-0474
TEL: (302) 477-2070
FAX: (302) 477-2706
E-mail: tjreed@mail.widener.edu

# TABLE OF CONTENTS


Table of Contents ........ i

Table of Authorities ........ ii

Issues Presented ........ 1

Statement of the Case ........ 1

A. Nature of the Case ........ 1

B. Statement of the Facts ........ 2

Argument ........ 5

I. Should Defendant's Motion to Dismiss Pursuant to Rule 12(B)(1) Be Denied? 5

Conclusion ........ 15

Appendix

## TABLE OF AUTHORITIES

### CASES

Adkins v. United States, 68 F.3d 1317 (Fed. Cir. 1995)........................... 8
Baxter v. Claytor, 652 F.2d 181 (D.C. Cir. 1981).................................... 13
Chambers v. United States, 417 F.3d 1218 (2005).................................. 10, 11, 12
Furlong v. United States, 138 Ct. Cl. 843 (Ct. Cl. 1957)........................ 6
Fisher v. United States, 402 F.3d 1167 (Fed. Cir. 2005)........................ 6
Friedman v. United States, 310 F.2d 381 (1962).................................... 10
Heisig v. United States, 719 F.2d 1153 (Fed. Cir. 1983)........................ 6, 8
Martinez v. United States, 333 F.3d 1295 (2003)................................... 7, 10
Mullen v. United States, 17 Cl. Ct. 578 (1989)....................................... 13
Murphy v. United States, 993 F.2d 871 (Fed.Cir. 1993).......................... 8
Real v. United States 906 F.2d 1557 (Fed. Cir. 1990) ........................... 7, 8, 9, 10
Sawyer v. United States, 930 F. 2d 1577 (Fed. Cir. 1991)...................... 7
Young v. United States, 529 F.3d 1380 (Fed. Cir. 2008)........................ 12

### STATUTES

10 U.S.C. § 1201........................................................................... 7, 8, 9
10 U.S.C. § 1551(b)........................................................................ 14
10 U.S.C. § 1552(a)(1).................................................................... 6
28 U.S.C. § 1491........................................................................... 7, 10
28 U.S.C. § 2501........................................................................... 7, 9

### RULES OF COURT

CFCR 12(b)(1)............................................................................. 15

### ARMY REGULATIONS

AR 40-501..................................................................................... 5

## ISSUES PRESENTED

I. SHOULD DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(1) BE DENIED?

## STATEMENT OF THE CASE

Plaintiff has attached a Supplemental Appendix to this brief. Citations to the Appendix and the Supplemental Appendix will be "A-. " For convenience purposes, the Supplemental Appendix is numbered consecutively with that filed by Defendant in support of its motion to dismiss and will begin with page A-20. The Supplemental Appendix Table of Contents immediately precedes the Supplemental Appendix after this brief.

### A. Nature of the Case

Roland S. Rollins, the plaintiff, appeals the decision of the Army Board for Correction of Military Records (ABCMR) denying his application for change of discharge. Rollins was honorably discharged from the Army for unsuitability on 1 July 1982. (See DD-214 at A-20) He filed an application for change of discharge on 12 December 1984, which was denied. on 7 January 1987. (A-2 to 7) At the time of his discharge, Rollins was not referred to a Medical Evaluation Board (MEB) nor did he appear before the Physical Evaluation Board (PEB).

On 7 January 2006, Rollins filed an application to reconsider the 7 January 1987 decision. (A-8) Rollins contended that he has submitted new and material evidence affecting his mental and physical health justifying reconsideration. The new and material evidence consisted of more than 1,000 pages of VA Medical Records and VA disability claim adjudication records. On 29

January 2008,. the ABCMR reconsidered its original 1987 decision. It held that "the preponderance of the evidence shows that [Mr. Rollins'] medical condition did not render him unfit to perform his duties. . ." ( ABCMR Decision at A-18).

Rollins filed a timely complaint with this Court on 16 June 2008. (Docket) The United States filed its motion to dismiss for want of jurisdiction on12 August 2008. (Docket)

**B. Statement of the Facts**

Roland S. Rollins, the plaintiff, enlisted in the U.S. Army on 28 February 1979. He was administratively separated for unsuitability and honorably discharged on 1 July 1982. (See DD-214 at A-20).

Rollins military occupational specialty was a medical specialist. ( A-4) After boot camp and advanced infantry training he completed basic airborne training and was assigned to the 82nd Airborne Division, Ft. Bragg, NC. (A-13)

Rollins suffered from physical and mental disabilities that hampered his ability to perform his duties from 1979 until his discharge. Rollins initial pr-enlistment physical exam given 9 February 1979 was negative for any shoulder or foot condition. (A- ) Rollins' Report of Medical History was negative for any trick or locked knee, foot trouble or nervous trouble. ( A- )[1] As the

[1] Rollins did check "yes" for "swollen or painful joints," "frequent or severe headaches," "chronic or frequent colds,"" severe tooth or gum trouble" and a "head injury." (Report of Medical History A- 23)

United States noted in its brief, Rollins was put on a temporary physical profile for a viral syndrome in May, 1979. The temporary profile was renewed on 21 May 1979 .(A-13)

Rollins' more serious conditions were not mentioned by the United States. On 23 August 1979, Rollins went on sick call for a shoulder injury. (A -25) On 21 September 1979, Rollins was seen for swollen feet and soreness in his left knee. ( A- 26) On 8 November 1979 Podiatric consultation report diagnosed Rollins' condition as "pes planus foot type B/c –flexible." (A-28) On 20 March 1980, Rollins went to sick call after dropping a loudspeaker on his right foot. (A-29) Two weeks later on 4 April 1980, Rollins stepped in a hole at Eglin Air Force base while on a night parachute mission and injured his left knee.( A-30) On 7 April he was seen by a physician at Ft. Bragg, NC for a follow-up after the speaker incident. The examining physician noted that Rollins' right foot was tender to the touch and his 2nd and 3rd toes were swollen.(A -32)

On 12 May 1980, Rollins was involved in a single vehicle accident on base and reported to sick call for contusions to his chest. He also complained of pain in his spine. (A-33 ) A 12 June 1980 follow-up exam noted that Rollins had developed a muscle spasm in his lumbar region and his right knee and ankle were tender to the touch.(A- 34) This condition persisted into August when he was seen again on 6 August for pain in the neck and buttock.(A-35 ) On 27 August, Rollins fell and injured his left foot and back ( A-36)

Rollins was struck in the neck during a September 1981 football game and reported to Sick Call on 30 September complaining of pain and stiffness in his neck.(A-37) In November, Rollins

developed a general malaise that was noted at sick call. (A-38 ) His blood sugar levels appeared to be normal, (A-40) but he was sent to see a physician because he developed lower abdominal pain (A-38 )

Meanwhile, Rollins' right shoulder dislocated spontaneously several times. He was seen on 2 February 1982 by a physical therapist who noted that his right shoulder was recurrently dislocated during "jumping." The therapist recommended exercises to try to strengthen Rollins; shoulder. (A-41) By June 1982, Rollins had received an upper body T-3 profile with restrictions on crawling, hand to hand combat contact sports, handling heavy materials and restrictions on overhead work, push-ups, pull-ups pr rope climbing.(A-42 ) This profile was in effect when he was discharged in July, 1982, without benefit of a pre-discharge physical examination or review by an MEB or PEB.

On 4 October 1982, shortly after his discharge, Rollins filed his initial Veterans Affairs Department (VA) compensation claim, listing his in-service disabilities as "right shoulder dislocations, July 1979, back & spinal problems, Feb. 1980, eye problem, Dec. 1980. Loss of hearing (some, date unknown), recurrent viral syndrome, May 1979" and "personality disorder–July 82." ( VA Form 21-526 A-44 to47) Rollins was granted service-connection rated at 0% disability for his shoulder dislocation and disabling facial acne on 15 October 1982 ( See Rating Decision A-48 to 50 )

After protracted appeals from adverse decisions, Rollins was granted 20% service connection for his shoulder injury residuals and 10% for painful acne in May 1994. (A-11) A

painful scar following an operation that was intended to relieve Rollins shoulder injury was also rated 10% disabling. (Rating Decision dtd 16 Mar. 2001 A-53 to 58) Further appeals resulted in increased disability ratings for Rollins' facial acne and residuals of his shoulder injury granted by the VA in September 2003, raising Rollins' total disability rating to 60%. (Rating Decision dtd 8 Sep 2003 A-59 to 81)

Rollins filed his application to re-open his 1982-87 application for change of discharge in December 2006. ( A-10) The ABCMR reopened his 1982-87 application and denied Rollins' claim on the ground that Rollins was fit for duty on 15 January 2008. ( A-9)

## ARGUMENT

### I. SHOULD DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(1) BE DENIED?

#### A. STATUTORY & REGULATORY BASIS FOR RELIEF BEFORE THE BOARD

Army Regulations provide that a soldier who has a medical or psychiatric condition that makes the soldier arguably unfit for further duty must be reviewed by a MEB to determine fitness for further duty. If the soldier is unfit, a PEB will decided the soldier's degree of impairment and place the soldier on temporary disability retirement or award severance pay. See AR 40-501 (3.3). If a soldier is discharged while unfit and is not given review by a MEB and PEB, the former soldier may file an application for correction of records with the ABCMR. The ABCMR

has the power to decide an application by a former soldier to re-open an honorable discharge to determine whether the former soldier was unfit for military duty at date of discharge and improperly discharged without MEB and PEB review and entitled to disability retirement pay or severance pay. See *Furlong v. United States*, 138 Ct. Cl. 843, 845-46 (Ct. Cl. 1957); 10 U.S.C. § 1552(a)(1). Judicial action with respect to a denial of disability retirement benefits does not mature until a service administrative agency charged with making disability determinations makes a final decision. *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed. Cir. 1983)

### B. Statutory Authority to Hear Claims: Court of Federal Claims

Congress granted the U.S. Court of Federal Claims jurisdiction "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department. . . "[2] The Court of Federal Claims may take jurisdiction over any claim if it finds after examining the pleadings that the claim is based on a "money-mandating statute." *Fisher v. United States*, 2005 U.S. App. LEXIS 3911, *13-*15

---

[2] 28 U.S.C. § 1491 (2005). Claims against United States generally; actions involving Tennessee Valley Authority
(a) (1) The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort. . . .

(2) To provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records, and such orders may be issued to any appropriate official of the United States. In any case within its jurisdiction, the court shall have the power to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just...

(Fed. Cir. 9 Mar. 2005); 28 U.S.C. § 1491. Rollins' ABCMR claim for disability retirement pay or severance pay under 10 U.S.C. § 1201 is a claim founded on a "money mandating statute." See *Sawyer v. United States*, 930 F. 2d 1577, 1580-81 (Fed. Cir. 1991); *Real v. United States* 906 F.2d 1557, 1560 (Fed. Cir. 1990) Therefore, the Court of Federal Claims had jurisdiction to decide Rollins' claim unless the statute of limitations barred the action.

### C. Jurisdiction Terminated by Statute of Limitations

The Federal Circuit has consistently interpreted 28 U.S.C. § 2501 as "jurisdictional". That is, failure to file a claim against the United States for money owed for a non-tort debt within six years after the right of action has accrued terminates the right of the claimant to sue, and denies the claimant access to the U.S. Court of Federal Claims as a result of the doctrine of sovereign immunity. *Martinez v. United States*, 333 F.3d 1295, 1303-04 (2003) The Court must decide when Rollins' claim for money "accrued." The Court defined accrual in *Martinez* as follows:

> A cause of action cognizable in a Tucker Act suit accrues as soon as all events have occurred that are necessary to enable the plaintiff to bring suit, i.e., when "all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for his money." Nager Elec. Co. v. United States, 177 Ct. Cl. 234, 368 F.2d 847, 851 (Ct. Cl. 1966); see Catawba Indian Tribe of S.C. v. United States, 982 F.2d 1564, 1570 (Fed. Cir. 1993); Hopland Band of Pomo Indians v. United States, 855 F.2d 1573, 1577 (Fed. Cir. 1988).

*Martinez*, 333 F.3d 303

Rollins' claim for disability retirement benefits or severance pay accrued when the ABCMR decided that he was fit for duty in 2008. Fitness for military duty is a question traditionally left

to the armed services to decide. See, e.g., *Adkins v. United States*, 68 F.3d 1317, 1322-1323 (Fed. Cir. 1995) (courts will not intrude on questions of promotion): *Murphy v. United States*, 993 F.2d 871, 873 (Fed.Cir. 1993); *Heisig*, 719 F.2d 1156 ( "responsibility for determining who is fit or unfit to serve in the armed services is not a judicial province . . . ." )

Since Rollins never had a MEB review prior to discharge, the only way to establish his unfitness for military service was to apply to the ABCMR to re-open his discharge on the grounds that he was not fit for duty. Until Rollins received a determination of fitness from the ABCMR, he had no claim against the United States for retirement benefits or severance pay under 10 U.S.C. § 1201.

This Court dealt with the accrual of a claim for retirement or severance pay in *Real v. United States* (906 F.2d 1557 (Fed. Cir. 1990) Real, a Viet Nam veteran received medical attention during his service career for an anxiety disorder. He was discharged in 1974 without going before a Medical Board or the Central Physical Evaluation Board. Shortly after discharge, Real experienced the classical symptoms of delayed onset post traumatic stress disorder. These symptoms persisted for years He was incarcerated for a period of time and was finally given a diagnosis of Post Traumatic Stress Disorder eight years after discharge. Real was awarded 100% service-connected disability compensation from the VA and he filed a petition with the Board for Correction of Naval Records (BCNR) to re-open his 1974 discharge and grant him disability retirement benefits. The BCNR denied his petition and Real filed his complaint in the U.S. Court of Federal Claims, which was dismissed on jurisdictional grounds having been filed

more than six years after Real's discharge. (*Id.* at 1559-60)

This Court held that disability retirement claims do not accrue for purposes of 10 U.S.C. § 1201 and 28 U.S.C. § 2501 "until the appropriate board either finally denies such a claim or refuses to hear it." *Real*, 906 F.2d 1560. The Court noted that:

> The generally accepted rule is that claims of entitlement to disability retirement pay do not accrue until the appropriate board either finally denies such a claim or refuses to hear it. *Friedman v. United States*, 310 F.2d 381, 159 Ct.Cl. 1 (1962), *cert. denied*, 373 U.S. 932, 10 L. Ed. 2d 691, 83 S. Ct. 1540 (1963). The decision by the first statutorily authorized board which hears or refuses to hear the claim is the triggering event. If at the time of discharge an appropriate board was requested by the service member and the request was refused or if the board heard the service member's claim but denied it, the limitations period begins to run upon discharge. A subsequent petition to the corrections board does not toll the running of the limitations period, *id.* 310 F.2d at 390, 159 Ct.Cl. at 114-15; nor does a new claim accrue upon denial of the petition by the corrections board, *id.* at 396-98, 159 Ct.Cl. at 25-29. However, "where the Correction Board is not a reviewing tribunal but is the first board to consider or determine finally the claimant's eligibility for disability retirement, the single cause of action accrues upon the Correction Board's final decision." *Id.* at 396, 159 Ct.Cl. at 25. Thus, under *Friedman* if the service member had neither requested nor been offered consideration by a retiring board prior to discharge, the later denial of his petition by the corrections board was the triggering event, not his discharge.

*Real*, 906 F.2d 1560

The ABCMR denied Rollins' claim for disability retirement benefits or severance pay on 29 January 2008. Rollins' claim against the United States for disability retirement benefits or severance pay accrued on that date. Rollins filed his action in the Court of Federal Claims on 24 July 2003, within six years of the ABCMR's final agency action. Rollins' claim was timely filed.

### D. Why Martinez Does Not Overrule Real Sub Silencio

*Martinez* decided the fate of an officer who received a less than honorable discharge.

Martinez wanted to be restored to active duty, to be considered for promotion and receive back pay. The Court's en banc decision concluded that Martinez' claim had "accrued" upon discharge because Capt. Martinez' claim for wrongful discharge was legally complete when he was discharged and he was not required to resort to any administrative remedies before seeking redress under 38 U.S.C. § 1491 and the Pay Act. *Martinez*, 333 F.3d 1309-11. In *Real*, the Court held that a claim for disability retirement did not accrue until a final Corrections Board decision on a first application for medical review of the fitness of the service member. *Real*, 906 F.2d 1560. A Tucker Act claim "accrues as soon as all events have occurred that are necessary to enable the plaintiff to bring suit, i.e., when 'all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for his money.'" *Martinez*, 333 F.3d 1303. Rollins had *no claim* for disability retirement benefits or severance pay until his application to re-open discharge was denied. When the ABCMR denied his retirement benefits, Rollins was entitled to demand payment. He could not demand payment *before* that denial. *Friedman v. United States*, 310 F.2d 381, 389 (1962).

### E. CHAMBERS V. UNITED STATES CONTROLS

The U.S. Court of Appeals for the Federal Circuit decided in 2005 in *Chambers v. United States*, 417 F.3d 1218 (2005). Chambers had served in the U.S. Army during Viet Nam. He had been hospitalized three times for anxiety related disorders, The Army discharged Chambers in 1970 without a MEB or PEB despite the history of anxiety problems. *Id.* at 1221. Chambers filed a VA compensation claim in 1987 and in 1990 he was adjudged 100% disabled. *Id.* at 1221-22.

In 1999, Chambers applied to the ABCMR for change of discharge. The ABCMR denied his application and Chambers appealed to the Court of Federal Claims which sustained the ABCMR without any challenge to its jurisdiction. *Id.* at 1222.

The Federal Circuit raised the jurisdictional issue sua sponte on appeal. The court called for supplemental briefs on jurisdiction. The United States contended that the Court of Federal Claims lacked jurisdiction because Chambers filed his complaint more than six years after his original discharge. Ultimately, the Federal Circuit determined that the Court of Federal Claims had jurisdiction to hear Chambers' appeal. The Court said:

> Unlike claims for unlawful discharge, however, claims of entitlement to disability retirement pay generally do not accrue until the appropriate military board either finally denies such a claim or refuses to hear it. *See Real*, 906 F.2d at 1560 (citing *Friedman,* 310 F.2d 381, 159 Ct. Cl. 1). The decision by the first statutorily authorized board that hears or refuses to hear the claim invokes the statute of limitations. *Id.* The difference between the two types of claims stems from their respective money-mandating statutes. In wrongful discharge cases brought under the Military Pay Act, 37 U.S.C. § 204, *Martinez* explained, the service member can seek redress immediately upon separation from service; an appeal to a Correction Board constitutes a "permissive" rather than a mandatory remedy. 333 F.3d at 1303. Because the Tucker Act does not require exhaustion of administrative remedies, a plaintiff's invocation of such a permissive remedy neither prevents the accrual of his cause of action nor tolls the statute of limitations.
>
> Disability retirement cases, however, are governed by 10 U.S.C. § 1201. As *Friedman* explained, in the context of section 1201, "Congress has entrusted the military boards with the task of determining whether a serviceman should be retired for disability and therefore . . . no cause of action arises (and the statute of limitations does not run) until a proper board has acted or declined to act." 310 F.2d at 389.
>
> * * * * *
>
> In other words, the Court of Federal Claims has no jurisdiction over disability retirement claims until a military board evaluates a service member's entitlement to such retirement in the first instance. Therefore, if at the time of discharge, the service member requested review by an appropriate board and the request was denied, or if the board heard the service member's claim and denied it, then the limitations period begins to run upon discharge. *Real*, 906 F.2d at 1560. But where the claimant "has not had or sought a Retiring

> Board, his claim does not accrue until final action by the Correction Board (which in that instance stands in the place of the Retiring Board as the proper tribunal to determine eligibility for disability retirement)." *Friedman*, 310 F.2d at 396.

*Id.* at 1223-24.

Chambers was last cited in *Young v. United States*, 529 F.3d 1380,1383 (Fed. Cir. 2008).[3] Rollins' claim under a money-mandating statute, 10 U.S.C. § 1201 , did not arise until the ABCMR finally denied his application. That event transpired on 29 January 2008 and Rollins' complaint was filed within six years of that date. Therefore, his claim is not barred by the statute of limitations.

### F. Rollins' Claim Under a Money-Mandating Statute Did not Accrue until January 2008

The Defendant asserts that Rollins' claim under a money-mandating statute accrued in 1984 when it first reviewed his application for change of discharge. ( Defendant's Brief at 8-10) The ABCMR issued its decision on 7 January 1987. ( A-3) Despite this assertion, the ABCMR chose to waive the three year limitation period and review Rollins' new and material evidence in January 2008. This decision had the effect of erasing the prior decision. The ABCMR has the authority to re-hear any application when it is in the interest of justice to do so. See 10 U.S.C. §

---

[3] The court noted that in Young, " The Court of Federal Claims further stated that if Mr. Young were seeking disability retirement pay, rather than pay based on wrongful discharge, then the complaint would not be time-barred because disability retirement claims generally do not accrue until the appropriate military board either finally denies the claim or refuses to hear it, citing Chambers v. United States, 417 F.3d 1218, 1223 (Fed. Cir. 2005). However, the court found that Mr. Young had clarified that he was not seeking disability retirement pay, for eligibility for disability retirement requires that the claimant was unfit to perform his military duties. Mr. Young agrees in this appeal that he does not seek disability retirement pay."

1552(b). The ABCMR chose to re-open Rollins' application and review the thousands of pages of medical and VA claim history that Rollins could not have submitted in 1987 when his application was originally denied. The January 2008 decision is a new decision on the merits based on the equity powers of the ABCMR. Therefore, Rollins has the right to appeal the ABCMR's negative decision.

Assume that the Defendant is correct: this court lacks jurisdiction to review an ABCMR decision that was based on re-opening an older decision more than six years prior to the filing date of the complaint because of an alleged injustice in the prior decision. The ABCMR would be entitled, according to the Defendant, to re-open an application then deny the application without judicial supervision or oversight. Many years ago, the courts determined that the ABCMR's decision to waive or not to waive its three year limitations period "in the interest of justice" was a reviewable decision. See *Baxter v. Claytor,* 652 F.2d 181, 185-86 (D.C. Cir. 1981) This Court has agreed with the Baxter court on at least one occasion. In *Mullen v. United States*, 17 Cl. Ct. 578 (1989) the court held that the ABCMR's decision not to waive the three year limitation period was a reviewable decision. The Court said:

While the cases are split with neither side having a clear preponderance, the weight of logic and persuasive authority requires a decision that board decisions be fully reviewable. First, defendant's main case, *Ballenger,* provides no logical basis for its conclusion that the board's timeliness decisions are not reviewable. The *Ballenger* court said "it is well within the board's discretion not to consider Ballenger's [late] application at all." *Ballenger,* 708 F.2d at 351. This court, as it is not bound by *Ballenger,* respectfully disagrees. The boards are statutorily required to examine an application to determine whether it is in the interest of justice to waive the time limit. Therefore, in the court's view, board discretion is not unlimited. A flat out denial without consideration of factors weighing the interest of justice would seemingly be an abuse of discretion and inconsistent with congressional intentions found in 10 U.S.C. §§ 1552(b).

*Id.* at 582.

Therefore a decision from this Court holding that the ABCMR's decision to re-open an old application for change of discharge and to reject the re-opened material is a non-reviewable decision would make Congress' intent in granting the ABCMR power to re-open a claim under 10 U.S.C. § 1551(b) absurd and irrational. One should never presume that Congress acted irrationally to block judicial review of ABCMR decisions to re-open old applications "in the interest of justice" when the ABCMR decides to waive the three year filing period then rules against the applicant on the merits. Congress could not have intended such an absurd result.

The Army has not been injured because Rollins has brought a 26 year old claim against the United States. During the past 26 years, the United States Army hasn't paid Rollins one farthing from its coffers. The Army should not be allowed to escape its responsibility to disabled soldiers for fair adjudication of their disability claims via an unduly strict reading of the statute of limitations that defines "accrual" by some standard of imputed medical and legal knowledge beyond the comprehension of ordinary soldiers.

## CONCLUSION

The Court should deny Defendants Motion to Dismiss under Rule 12(b)(1) because Rollins filed a timely complaint within six years of final administrative determination of his entitlement to disability retirement or severance pay by the ABCMR.

DATED: 22 August 2008

/s/ Thomas J. Reed

Thomas J. Reed
Widener University School of Law
Veterans Law Clinic
P.O. Box 7474
Wilmington, DE 19803
TEL: (302) 477-2070
FAX: (302) 477-2706
E-mail: tjreed@mail.widener.edu

Attorney for Plaintiff